# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

### CIVIL ACTION NO. 1:20-cv-642

| | |
|---|---|
| **FAHMIA, INC. and PRINZO & ASSOCIATES, LLC, individually and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | **COMPLAINT- CLASS ACTION** |
| **v.** | **DEMAND FOR JURY TRIAL** |
| **BANK OF AMERICA, CORP.; BANK OF AMERICA, N.A. and DOES 1 through 100, inclusive,** | |
| **Defendants.** | |

Plaintiffs Fahmia, Inc. ("Fahmia") and Prinzo & Associates, LLC ("Prinzo") (collectively, "Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial against Defendants Bank of America, Corp.; Bank of America, N.A. (collectively, "Bank of America"), and Does 1 through 100, inclusive (collectively with Bank of America, the "Defendants"), seeking compensation from Defendants, who refuse to comply with the CARES Act that requires it to pay out of the compensation it received for processing PPP loans, for services Plaintiffs and a large number of other agents rendered on behalf of recipients of Small Business Administration ("SBA") emergency loans. Plaintiffs allege as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief.

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.      In response to the shut-down of virtually every business across all non-essential industries due to COVID-19, the federal government has raced over the past few months to ease the impact of the shut-down on the U.S. economy.  To keep afloat small businesses, and to encourage those businesses to avoid massive worker layoffs and furloughs further damaging the economy, Congress decided to create an economic relief program to distribute money to small businesses.

2.      In order to distribute the money swiftly to small businesses, Congress decided to utilize the nation's financial institutions to take applications and distribute the funds that would be fully guaranteed by the federal government.  However, to avoid delay, Congress decided that the financial institutions would not be required to verify the accuracy of the applications.  Instead, the burden to provide accurate information was put directly and solely on the small businesses submitting applications.

3.      The applications would need to be simple and the amount of the economic relief would be based on historical payroll information with specific limitations.  However, as the lenders would not be verifying the information, there would need to be a number of representations and certifications, and specific warnings because the failure to provide true and accurate information could subject the small business owner to five years in prison and a $250,000 fine.

4.      In order for these small businesses to be able to make timely, truthful and accurate applications, Congress understood that small businesses would need assistance from the nation's professional accountants, tax preparers, financial advisors, attorneys, and other such agents normally relied upon by small businesses.

COMPLAINT AND DEMAND FOR JURY TRIAL

5.     On March 27, 2020, Congress passed the SBA's Paycheck Protection Program ("PPP") which initially authorized up to $349 billion in forgivable loans to small businesses to cover payroll and other expenses (PPP I).  After the initial funds quickly dried up, Congress added $310 billion additional dollars to the program (PPP II).

6.     The PPP was designed to be fast and straightforward, allowing business to apply through SBA-approved lenders and await approval.  Once approved, lenders would be compensated in the form of a generous origination fee paid by the federal government, with the requirement that the lender would be responsible for paying the fee owed to the loan applicant's agent (*e.g.,* attorney or accountant).  Both the lender and the agents were specifically forbidden by the PPP from charging the small business borrower any amounts for the loan or the assistance in preparing the application for the loan.  The amount of the total compensation and the allocation between the lender and the agents assisting the borrowers in preparing the application was specifically set out in the PPP.  For the majority of loans (those under $350,000), the lender would receive an amount equal to 5% of the loan as compensation, and if the borrower used an agent such as a CPA or accountant, the lender was to pay an amount equal to 1% of the loan amount to the agent.  In other words, compensation from the federal government to the lender and the borrower's agent was allocated as 80% to the lender and 20% to the CPA or attorney assisting the small business borrower.

7.     Defendants own and operate one of the world's largest banks, with over $2 trillion in assets.  They have approximately 4,300 financial centers across the United States.  The Small Business Administration has reported that Bank of America submitted over 325,853 PPP

COMPLAINT AND DEMAND FOR JURY TRIAL

applications totaling nearly $25 billion in borrowed funds.[1]  It also reported that average size loan it issued was $76,517.  Assuming a conservative average fee of four percent, they have, accordingly, been allocated approximately $1 billion in origination fees, from which they were required to pay the agents who assisted the borrowers in submitting applications.

8.      However, Defendants apparently decided that they do not need to complete the final step of the process and based on information and belief have refused to pay the agents who assisted PPP loan recipients with their applications.  This practice seemed to be a deliberate scheme from the beginning as even though they were required to pay agents that assisted in the application process, Defendants did not ask any questions to determine whether borrowers utilized an agent in completing applications.  It appears that this scheme was to claim ignorance of the existence of the agent as an excuse not to pay the agent its share of the compensation.  This refusal is harming accountants, attorneys, and other agents who dropped everything (in the midst of tax season) to assist their customers in filling out these vital loan applications correctly and in compliance with the PPP, and who were specifically only allowed to be paid for these services out of the compensation paid to the lender.  The Defendants' failure to pay agents is in blatant violation of PPP regulations stating that agent fees "will be paid by the lender out of the fees the lender receives from SBA."

9.      These agents, including Plaintiffs, have no other recourse for collecting fees for assisting borrowers on PPP loan applications because the PPP regulations delegate the responsibility for paying agents to the lenders *alone*.  And yet, Defendants have disregarded the regulations and refused to pay agents who assisted small businesses in receiving PPP funds.

---

[1]     *See Small Business Administration Paycheck Protection Program Report (PPP) approvals through 6/6/2*, available at https://www.sba.gov/sites/default/files/2020-06/PPP_Report_Public_200606%20FINAL_-508.pdf (last accessed June 19, 2020).

COMPLAINT AND DEMAND FOR JURY TRIAL

10.     Plaintiffs has been harmed by Defendants' practice.  As CPA firms that do payroll and other small business support functions, Plaintiffs assisted small business clients who submitted application to Defendants and was then funded through the PPP program.  Based on information and belief, Defendants have received the 5% compensation related to that loan but have not paid Plaintiffs their 1% agent fee related to the loan.

11.     As a result of Defendants' acts and omissions, Plaintiffs, and many others like them have been deprived of payment for their critical work in supporting their clients' PPP loan applications.  As such, Plaintiffs bring this Class Action Complaint and Demand for Jury Trial in order to vindicate their rights and those of agents everywhere who are similarly situated, and to force Defendants to account for their blatant violation of the PPP and to pay agents their portion of the compensation.

## PARTIES

12.     Plaintiff Fahmia, Inc. is a Certified Public Accounting ("CPA") firm incorporated in California, with its principal place of business located in Torrance, California.

13.     Plaintiff Prinzo & Associates is a Certified Public Accounting ("CPA") firm organized under the laws of Pennsylvania, with its principal place of business located in Canonsburg, Pennsylvania.

14.     Defendant Bank of America Corp. is a Delaware corporation and the parent company of Defendant Bank of America N.A.  Bank of America Corp. is an American multinational investment bank and financial services company headquartered in Charlotte, North Carolina.  Its Consumer & Small Business Banking Team is made up of Retail, Preferred and Small Business Banking and provides financial services for approximately 3 million small business owners through its 4,300 retail financial centers, 3,000 lending centers, 2,700 financial

COMPLAINT AND DEMAND FOR JURY TRIAL

centers and 16,900 ATMs in the United States. Through its subsidiaries, Bank of America Corp. conducts substantial business within this District.

15.     Defendant Bank of America, N.A., is a federally chartered bank and a subsidiary of Bank of America Corp.  It is headquartered in Charlotte, North Carolina and conducts substantial business within this District.

16.     In this Complaint, references made to any act of any Defendant shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendants named in this lawsuit committed or authorized such acts, or failed and/or omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendants and did so while acting within the scope of their employment or agency.

17.     Plaintiffs are unaware of the names, identities or capacities of the Defendants sued as Doe Defendants 1 through 100, but is informed and believes and thereon alleges that such fictitiously-named defendants are responsible in some manner for the damages and unfair business practices and violation of rights as described herein.  Plaintiffs will amend this Complaint to state the true names, identities, or capacities of such fictitiously named Defendants when ascertained.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because, as to the proposed Class and Subclasses, (a) at least one member of the proposed Class, which consists of at least 100 members, is a citizen of a different state than Defendants; (b) the claims of the proposed Class Members exceed $5,000,000 in the aggregate, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

COMPLAINT AND DEMAND FOR JURY TRIAL

19.     Personal jurisdiction over Defendants is proper because Defendants are headquartered in the State of North Carolina, transact business in the State of North Carolina, and a substantial number of the events giving rise to the claims alleged herein took place in North Carolina.

20.     This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under 85 Fed. Reg. 20816 § (4)(c) (hereinafter, the "PPP regulations").

21.     Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(d) because defendants are residents of this judicial District.

## FACTUAL BACKGROUND

22.     The spread of COVID-19 was declared a pandemic by the World Health Organization ("WHO") on March 11, 2020.

23.     On March 13, 2020, President Donald Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

24.     The Federal Government expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State and local public health measures that are being taken to minimize the public's exposure to the virus."[2]

---

[2]     *See Business Loan Program Temporary Changes; Paycheck Protection Program,* 13 CFR Part 120, Interim Final Rule ("SBA PPP Final Rule").

COMPLAINT AND DEMAND FOR JURY TRIAL

25.     The economic fallout from COVID-19, and the national response to it, was immediate and enormous.  As "stay at home" issues were ordered by states across the nation, countless businesses were forced by law to overhaul their business models, scale back their business dramatically, or shutter–either temporarily or permanently.  Business were further harmed as the public began to avoid all public spaces.  Furloughs and layoffs were rampant in the private sector.

26.     On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis and to overwhelming public pressure, the U.S. Senate passed the Coronavirus Aid, Relief, and Economic Security Act, or the CARES Act.  The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020.  Amounting to approximately $2 trillion, the CARES Act was the single-largest economic stimulus bill in American history.

27.     Critically, the CARES Act created a $659 billion loan program for business with fewer than five hundred employees, called the "Paycheck Protection Program" ("PPP").[3]  The goal of the PPP was to provide American small businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payrolls.  The loans are fully federally guaranteed and administered by the Small Business Administration ("SBA").[4]

28.     Basically, PPP loans operate more like grants if the recipient follows certain rules, including that at least 75 percent of the loan goes toward payroll.[5]  Businesses that follow the rules

---

[3]     The first phase of the PPP was for $349 billion, and when that quickly ran out, a second phase was funded for $310 billion.
[4]     Small Bus. Admin., Docket No. SBA-2020-0015, 13 CFR Part 120, Paycheck Protection Program 3245-AH34, Interim Final Rule, 85 Fed. Reg. 20814 § (2)(o) (Apr. 15, 2020).
[5]     85 Fed. Reg. 20812 § (2)(e); *id.* at 20813 § (2)(o).

COMPLAINT AND DEMAND FOR JURY TRIAL

are permitted to submit a request to their SBA lender for total forgiveness. Otherwise, the loan matures in two years and carries a one percent interest rate.[6]

29. The SBA was charged with creating the PPP implementing regulations. It issued the first interim final rule ("Initial Rule") on April 2, 2020, allowing businesses to begin applying for PPP loans with all SBA lenders on April 3, 2020.

30. An important piece of the PPP was that applications were to be processed and funded on a "first-come, first-served" basis—that is, the SBA was to process applications and distribute funds based on the order in which they were received. This made the SBA's list of approved lenders key gatekeepers in this process, which the lenders certainly understood. Because the PPP was to be administered only through SBA-approved lenders, and because applicants were applying for funds from the single pot allocated for the program, submitting an accurate application for a loan through the SBA-approved lender as quickly as possible was critical.

31. Congress added an incentive for the SBA-affiliated lenders, knowing they would face a crush of PPP loan applications: for each loan processed and approved, the bank would receive an origination fee of five percent for loans up to $350,000; three percent for loans between $350,000 and $2 million; and one percent for loans between $2 million and $10 million.[7]

32. With similar incentives in mind, Congress and the SBA also carved out a specific benefit for the countless accountants, attorneys, and advisors who would need to lead or assist their clients in preparing and filing PPP loan applications. These individuals and entities are referred to as "agents" in the CARES Act and PPP implementing regulations.

---

[6]     *Id.* at 20813 § (2)(j).
[7]     *Id.*

COMPLAINT AND DEMAND FOR JURY TRIAL

33.     As explained in an Information Sheet provided for "lenders," the SBA states that '[a]n 'Agent' is an authorized representative and can be: an attorney; an accountant; a consultant; someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant; someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans; a loan broker; or any other individual or entity representing an applicant by conducting business with the SBA."[8]

34.     In addition, the SBA Regulations provide that "Agent fees **will** be paid out of lender fees. The lender **will** pay the agent. **Agents may not collect any fees from the applicant**. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP" loan is as follows ("Agent Fees"): one percent (1%) for loans up to $350,000; 0.50% for loans between $350,000 and $2 million; and 0.25% for loans between $2 million and $10 million.[9]

35.     Within this context, Congress and the SBA set up a straightforward system for the disbursement of PPP loan funds where the applicant is assisted by an agent: (i) the agent prepares the application and/or necessary supporting documents for the client's application; (ii) the client applies for the PPP loan through the lender; (iii) the lender submits the application to the SBA; (iv) the SBA approves the loan and sends the client the money, through the lender, and eventually pays the lender's origination fee; and (v) the agent submits the request for fee payment to the lender with the agent's fee based upon (a) the work performed for the client and (b) the caps on agent fees provided by the SBA's PPP regulations.

---

[8]     U.S. Dep't of Treasury, *Paycheck Protection Program (PPP) Information Sheet Lenders,* https://home.treasury.gov/system/files/136PPP%20%Lender%20Information%20Fact%20Sheet.pdf (last accessed June 19, 2020).

[9]     85 Fed. Reg. 20816 § (4)(c).

COMPLAINT AND DEMAND FOR JURY TRIAL

36.     Unfortunately, Defendants are refusing to pay the fees of agents for their assistance in providing an accurate and truthful application for funding unless a "pre-loan approval written agreement between the agent and Bank of America exists."[10] However, amid an unprecedented economic/pandemic crisis, this policy jeopardizes time-sensitive loan applications for no other reason but to ensure that Bank of America would comply with what the CARES Act already required of them.

37.     Further, the fact that Defendants set up the application process without even asking the borrower if they utilized the assistance of an agent, suggests that the Defendants did not want to have any record of the agent information in their files. This remains especially true for agents, including Fahmia, who provided notice to the Defendants by submitting applications—on Bank of America's own PPP application forms—signed by Fahmia's CPAs as "authorized representatives" of borrowers, yet received no follow-up from Defendants regarding any need to execute a separate "pre-loan approval written agreement" between Plaintiffs and Defendants.  Nor did Defendants later request such information from applicants.

38.     Upon information and belief, the refusal to pay agent fees is a company-wide policy. This policy of refusal to pay to agents "Agent Fees" that are due, and that *only* the lenders are authorized to pay, stands as an immediate threat to these agents' abilities to receive payment. In the midst of an unprecedented economic/pandemic crisis, this policy represents short-sighted profit-padding at best, and blatantly illegal conduct, at worst.

39.     Refusing to pay Agent Fees is also inconsistent with agreements Defendants made in order to become approved PPP lenders.  Specifically, based on information and belief,

---

[10] Bank of America, The Paycheck Protection Program for business owners: An important update, https://www.privatebank.bankofamerica.com/articles/caresact.html (last accessed June 19, 2020)

COMPLAINT AND DEMAND FOR JURY TRIAL

Defendants were required to fill out and sign the "CARES Act Section 1102 Lender Agreement" for each loan.[11] This submission requires each putative PPP lender to certify, under penalty of perjury, that it (i) "is in compliance and will maintain compliance with all applicable requirements of the [PPP], and PPP Loan Program Requirements[,]" (ii) will "service and liquidate all covered loans made under the Paycheck Protection Program in accordance with PPP Loan Requirements[,]" and (iii) will "close and disburse each covered loan in accordance with the terms and conditions of the PPP Authorization and PPP Loan Requirements."

40.     To the extent Defendants had to certify, at any point, that they would follow the PPP's regulations in making PPP loans, they were not being truthful. Defendants' policy to refuse to pay Agent Fees directly violates the PPP's implementing regulations.

41.     It is pursuant to these representations that Defendants were able to process over 325,853 PPP applications totaling nearly $25 billion in funds.[12] The average loan size was $76,517. Assuming a conservative average fee of four percent, they have, accordingly, been allocated over $1 billion in origination fees, from which they were required to pay the agents who assisted the borrowers in submitting applications.

42.     Knowing that they were required to pay agents a percentage of PPP loan origination fees if an agent assisted an applicant in preparing and submitting the application, Defendants elected not to ask borrowers whether they utilized an "agent" to assist them in the application

---

[11]     U.S. Small Bus. Admin., CARES Act Section 1102 Lender Agreement, https://www.sba.gov/sites/default/files/2020-04/PP--Agreement-for-New-Lenders-Banks-Credit-Unions-FCS-w-seal-fillable.pdf (last accessed June 19, 2020).
[12]     *See Small Business Administration Paycheck Protection Program Report (PPP) approvals through 6/6/2*, available at https://www.sba.gov/sites/default/files/2020-06/PPP_Report_Public_200606%20FINAL_-508.pdf (last accessed June 19, 2020).

COMPLAINT AND DEMAND FOR JURY TRIAL

process and have not paid Plaintiffs or similarly situated agents compensation from funded PPP loans.

## PLAINTIFF FAHMIA'S EXPERIENCE

43. Plaintiff Fahmia is a California CPA firm which has provided financial services to clients in the Southern California Area for over 30 years, including bookkeeping, taxation, payroll services, financial planning and consulting for small businesses and individuals. In March, Fahmia, became aware that the CARES Act had been signed into law. Fahmia, knowing that the COVID-19 crisis would significantly impact clients' businesses, sought to obtain PPP loans through various SBA-approved lenders on behalf of clients.

44. Fahmia's professionals spent considerable time familiarizing themselves with the Act and the related SBA Regulations, in particular, (a) Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP and (b) Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

45. In or about March, April, and May 2020, Fahmia assisted many clients in the gathering and analysis of their documents, as well as the calculations and preparation of the loan applications.

46. Based on the SBA Regulations, Fahmia understood that it was not allowed to charge clients a fee relating to the application process. The agents were only allowed to receive compensation from the agents' share of the estimated $20 billion in fees that the Federal Government paid the Lenders for originating the PPP loans.

47. For its clients, Fahmia had the primary role in calculating the payroll information needed for the application, and providing the clients' accounting information, advice,

COMPLAINT AND DEMAND FOR JURY TRIAL

documentation in support of the PPP loan application. Fahmia will have ongoing responsibility for advising clients on the forgiveness of the PPP loan.

48.     Fahmia, Inc. provided these services to at least 17 borrowers who obtained PPP loans from Defendants totaling at least $795,580. These borrowers include, but are not limited to, the following:

| **Borrower** | **Loan Date** | **Loan Amount** |
| --- | --- | --- |
| Borrower 1 | 5/4/2020 | $ 113,209.00 |
| Borrower 2 | 4/21/2020 | $ 15,625.00 |
| Borrower 3 | 5/12/2020 | $ 34,862.00 |
| Borrower 4 | 5/8/2020 | $ 57,300.00 |
| Borrower 5 | 5/4/2020 | $ 18,332.00 |
| Borrower 6 | 5/11/2020 | $ 35,563.00 |
| Borrower 7 | 5/4/2020 | $ 54,160.00 |
| Borrower 8 | 5/1/2020 | $ 163,719.00 |
| Borrower 9 | 5/14/2020 | $ 49,022.00 |
| Borrower 10 | 5/14/2020 | $ 32,255.00 |
| Borrower 11 | 5/5/2020 | $ 40,182.00 |
| Borrower 12 | 5/5/2020 | $ 109,477.00 |
| Borrower 13 | 5/1/2020 | $ 15,195.00 |
| Borrower 14 | 5/4/2020 | $ 9,382.00 |
| Borrower 15 | 6/15/2020 | $ 3,950.00 |
| Borrower 16 | 6/4/2020 | $ 22,515.00 |

COMPLAINT AND DEMAND FOR JURY TRIAL

| Borrower 17 | 5/1/2020 | $ 20,832.00 |
|---|---|---|
| **TOTAL:** | | **$ 795,580.00** |

Based on information and belief, for these loans, Bank of America was paid or will be paid origination fees totaling $39,779, of which Plaintiff is entitled to $7,955.80 (1% of total loan amounts) of those fees for its work as the agent of the borrowers in submitting the application and documentation.

49.     Defendants did not comply with the SBA Regulations because they have not paid Fahmia the agent fees to which it is entitled despite awarding PPP loans to Fahmia's client for whom Fahmia acted as a PPP agent.  Instead, Defendants retained all of the Agent Fees for themselves.

50.     As a result of Defendants' unlawful and unfair actions, Fahmia and the Class have suffered financial harm by being deprived of the statutorily mandated compensation for the professional services provided to clients in assisting them with obtaining PPP loans.

### PLAINTIFF PRINZO & ASSOCIATES' EXPERIENCE

51.     Plaintiff Prinzo is a Pennsylvania CPA firm which has provided financial services to clients in sixteen different states and four different countries since 1991, including bookkeeping, taxation, payroll services, and financial planning and consulting for small businesses and individuals.  In March, Plaintiff became aware that the CARES Act had been signed into law. Prinzo, knowing that the COVID-19 crisis would significantly impact clients' businesses, sought to obtain PPP loans through various SBA-approved lenders on behalf of clients.

52.     Prinzo's professionals spent considerable time familiarizing themselves with the Act and the related SBA Regulations, in particular, (a) Section 1102, which permits the SBA to

COMPLAINT AND DEMAND FOR JURY TRIAL

guarantee 100% of Section 7(a) loans under the PPP, and (b) Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

53.     In or about March, April, and May 2020, Prinzo assisted many clients in the gathering and analysis of their documents, as well as the calculations and preparation of the loan applications.

54.     Based on the SBA Regulations, Prinzo understood that it was not allowed to charge clients a fee relating to the application process.   The agents were only allowed to receive compensation from the agents' share of the estimated $20 billion in fees that the Federal Government paid the Lenders for originating the PPP loans.

55.     For its clients, Prinzo had the primary role in calculating the payroll information needed for the application, and providing the clients' accounting information, advice, and documentation in support of the PPP loan application. Prinzo will have ongoing responsibility for advising clients on the forgiveness of the PPP loan.

56.     Prinzo provided these services to at least one client who obtained a PPP loan from Defendants totaling $101,509.  Based on information and belief, for these loans, Bank of America was paid or will be paid origination fees totaling $5,075,  of which Prinzo is entitled to $1,015.09 (1% of total loan amounts) of those fees for its work as the agent of the borrowers in submitting the application and documentation.

57.     Defendants did not comply with the SBA Regulations because they have not paid Prinzo the agent fees to which it is entitled despite awarding PPP loans to Prinzo's client for whom Prinzo acted as a PPP agent.  Instead, Defendants retained all of the Agent Fees for themselves.

COMPLAINT AND DEMAND FOR JURY TRIAL

58.     As a result of Defendants' unlawful and unfair actions, Prinzo and the Class have suffered financial harm by being deprived of the statutorily mandated compensation for the professional services provided to clients in assisting them with obtaining PPP loans.

## CLASS ALLEGATIONS

59.     Plaintiffs brings this action on behalf of itself and all others similarly situated as a nationwide Class, defined as follows:

> All persons and businesses who served as an agent in relation to, and provided assistance to a client in relation to, the preparation and/or submission of a client's PPP loan application to Bank of America which resulted in a loan being funded under the PPP. Plaintiffs further brings this action on behalf of a subclass of individuals defined as follows:

> **California Subclass.**  All persons and businesses in California who served as an agent in relation to, and provided assistance to a client in relation to, the preparation and/or submission of a client's PPP loan application to Bank of America which resulted in a loan being funded under the PPP.

> **North Carolina Subclass.**  All persons and businesses in North Carolina who served as an agent in relation to, and provided assistance to a client in relation to, the preparation and/or submission of a client's PPP loan application to Bank of America which resulted in a loan being funded under the PPP.

> **Pennsylvania Subclass.**   All persons and businesses in Pennsylvania who served as an agent in relation to, and provided assistance to a client in relation to, the preparation and/or submission of a client's PPP loan application to Bank of America which resulted in a loan being funded under the PPP.

60.     Excluded from this Class and Subclass (hereinafter "the Class" unless otherwise indicated) are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for

COMPLAINT AND DEMAND FOR JURY TRIAL

exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits of otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

61.     Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon new facts obtained during discovery.

62.     *Numerosity:*  The Class is composed of hundreds of Agents ("Class Members") whose joinder in this action would be impracticable.  The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

63.     *Commonality and Predominance:*  There is a commonality in questions of law and fact affecting the Class.  These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

    a.   Whether Defendants' conduct violates the CARES Act and/or its implementing regulations;

    b.   Whether Defendants are required to compensate Plaintiffs out of the origination fees obtained from SBA through the PPP;

    c.   Whether Plaintiffs are entitled to compensation by Defendants for its work assisting in its client's PPP loan application;

    d.   Whether Defendants' conduct was willful and knowing;

    e.   Whether Defendants submission of completed Form 2484 constituted an agreement;

    f.   Whether Defendants breached that agreement;

COMPLAINT AND DEMAND FOR JURY TRIAL

g. Whether Defendants' conduct was pursuant to a company-wide policy or policies; and

h. Whether Defendants' conduct constitutes unjust enrichment.

64. *Superiority:* This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be difficult and not economical for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Compliant. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

65. *Typicality:* Plaintiffs' claims are typical of, and are not antagonistic to, the claims of all Class Members, in that Plaintiffs and members of the Class sustained damages arising out of Defendants' uniform wrongful conduct.

66. *Adequacy:* Plaintiffs will fairly and adequately represent and protect the interests of the Class and has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Plaintiffs' claims are representative of the claims of the other members of the Class. That is, Plaintiffs and members of the Class sustained damages

COMPLAINT AND DEMAND FOR JURY TRIAL

as a result of Defendants' uniform conduct. Plaintiffs also have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs. Both Plaintiffs and their counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiffs nor counsel have any interest adverse to other Class Members.

67. *Ascertainability:* Plaintiffs are informed and believe that Defendants keep extensive computerized records of their loan applications through, *inter alia,* computerized loan application systems and federally-mandated record-keeping practices. Defendants have one or more databases through which all borrowers may be identified and ascertained, and it maintains contact information, including electronic mail and mailing address. From this information, the existence of the Class Members (i.e., borrowers' Agents) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

68. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT I – DECLARATORY RELIEF

69. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

70. Plaintiffs and the Class represent individuals who are "agents" as defined by the SBA regulations for the PPP.

71. Plaintiffs and the putative Class have assisted clients with the process of preparing applications, and applying for, PPP loan funds. Defendants, despite the clear command of the SBA's PPP regulations, have refused to make these payments. An actual controversy has arisen between Plaintiffs and the Class, on one hand, and Defendants on the other, wherein Defendants

COMPLAINT AND DEMAND FOR JURY TRIAL

deny by their refusal to pay that they are obligated to pay Plaintiff's and the Class's "agent" fees pursuant to PPP regulations.

72. Plaintiffs and the Class seek a declaration, in accordance with SBA regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants are obligated to set aside money to pay, and pay third-party agents –within the SBA-approved limits—for the work performed on behalf of a client in relation to the preparation and/or submission of a PPP loan application that resulted in a funded PPP loan.

### COUNT II – BREACH OF CONTRACT, THIRD PARTY BENEFICIARY

73. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

74. Based on information and belief, Defendants entered into an agreement with the SBA in connection with the loans funded in the PPP.

75. The agreements required that Defendants would adhere to all PPP rules and regulations and incorporate these requirements by reference. Defendants and the SBA understood that agents involved in the preparation and submission of PPP loan applications would need to be compensated.

76. The SBA's PPP regulations specifically require that PPP lenders pay the fees of any "agent" that assists with the PPP loan application process, within limits.

77. Defendants understood that Plaintiffs and the Class were intended beneficiaries in this agreement. Nevertheless, Defendants have refused to live up to their end of the bargain and have uniformly refused to pay agent fees to Plaintiffs and the Class.

78. By refusing to pay agent fees in accordance with SBA regulations, Defendants are violating the terms of their agreement, thereby damaging Plaintiffs and the Class. Plaintiffs and

COMPLAINT AND DEMAND FOR JURY TRIAL

the Class thus ask this Court to award them damages sufficient to make them whole, and compensate them for work they did in preparing clients' PPP loan application for loans that were funded, consequential damages, and all other damages available at law.

## COUNT III - VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

79.    Plaintiff Fahmia incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

80.    Pursuant to California Business & Professions Code § 17200, "any unlawful, unfair…business act or practice" is prohibited in the State of California.  This statute creates a private right of action based on any unlawful or unfair act committed in the course of business, particularly where it provides the unlawful actor with an unfair business advantage.  Local, state and/or federal law can serve as the basis for an "unlawful…business act or practice[.]"

81.    The SBA's PPP regulations specifically provide that "lenders" who provide loans under the program will be responsible for paying "agent" fees, within prescribed limits.

82.    Defendants have uniformly refused to pay these fees to Fahmia and the Class.  As a result, Defendants have engaged in unlawful conduct that has cost Plaintiff and the Class millions of dollars in fees, collectively.

83.    Defendants have also engaged in "unfair" business practice through this conduct, as well as set forth above.

84.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits, which they would not have received if they had not engaged in the violations of Section 17200 described in this Complaint.

COMPLAINT AND DEMAND FOR JURY TRIAL

85.     Because Plaintiff and the Class have been harmed by Defendants' unreasonable, unlawful, and unfair business practice of refusing to pay agents who assist in the preparation and submission of PPP loan application materials, Plaintiff asks that they be held liable for restitution, be enjoined from further refusing to pay such agent fees, and that Plaintiff be awarded all other such relief available by law.  Plaintiff, pursuant to California Business & Professions Code § 17203, seeks an order of this court compelling Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unlawful and unfair business practices in the future.

## COUNT IV - VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (N.C. Gen. Stat. § 75-1.1 *et seq.*)

86.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

87.     Plaintiffs and the North Carolina Class members are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("NCUDTPA").

88.     Defendants' conduct as set forth herein was performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in North Carolina General Statutes § 75-1.1(b). All the wrongful conduct alleged herein occurred, and continues to occur, in the course of Defendants' business.

89.     The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

COMPLAINT AND DEMAND FOR JURY TRIAL

90.    Defendants held themselves out as offering PPP loans under the CARES Act and SBA Regulations. Plaintiffs and Class Members reasonably expected and reasonably relied on Defendants operating within the law governing the loans requiring payment of the PPP Agent Fees. Defendants, in fact, failed to comply with the CARES Act and SBA Regulations.

91.    Defendants engaged in lending to businesses under the CARES Act and PPP program and thus were required to abide by obligations set forth in the SBA Regulations.

92.    The SBA's PPP regulations specifically declare that "lenders" who provide loans under the program will be responsible for paying "agent" fees, within prescribed limits.

93.    Defendants' conduct, as set forth herein, constitutes unfair or deceptive acts or practices that violated the NCUDTPA, including, but not limited to, (1) failing to adhere to the PPP's rules and regulations in withholding payment from agents who assisted in the preparation of PPP loans and (2) failing to disclose material information that was known to Bank of America since becoming an approved PPP lender concerning the PPP loan process and Defendants' requirement to pay agents who assisted borrowers in obtaining PPP loans.  Defendants are directly liable for these violations of law.

94.    Defendants' acts and practices proximately caused actual injury to Plaintiffs and the other North Carolina Class members, as Plaintiffs have not been paid, as legally required by the PPP.  Plaintiffs and the Class members suffered ascertainable loss as a result of Defendants' conduct.

95.    Based on Defendants' willful violation of the NCUDTPA,  Defendants are liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages. N.C. Gen. Stat. § 75-16.

COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT V - VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (73 P.S. § 201-1, *et seq.*)

96.     Plaintiff Prinzo incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

97.     Defendants' conduct as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, failing to adhere to the PPP's rules and regulations in withholding payment from agents who assisted in the preparation of PPP loans.

98.     The SBA's PPP regulations specifically provide that "lenders" who provide loans under the program will be responsible for paying "agent" fees, within prescribed limits.

99.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

100.    Defendants' actions impact the public interest because Prinzo and Class members incurred hours of manpower and costs to assist small businesses in satisfying the SBA's demands in submitting timely and accurate information in the middle of a deadly pandemic and the worst economic conditions since the Great Depression. Defendants' refusal to recompense agents for their efforts disincentivizes agents from assisting the public with future SBA and PPP requirements, including those requirements necessary to obtain partial loan forgiveness under the PPP program.

101.    Prinzo and the Class members suffered ascertainable loss as a result of Defendants' conduct. Plaintiff has not been paid as legally required by the PPP. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

102.    Defendants' conduct proximately caused the injuries to Prinzo and the Class.

COMPLAINT AND DEMAND FOR JURY TRIAL

103. Defendants are liable to Prinzo and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

## COUNT VI – UNJUST ENRICHMENT

104. Plaintiffs incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

105. Unjust enrichment, or restitution, may be alleged where a defendant unjustly obtains and retains a benefit to a plaintiff's detriment, where such retention violates fundamental principles of equity, justice, and good conscience.

106. Here, Defendants have obtained millions of dollars in benefits in the form of PPP loan origination fees. A portion of those fees were to be paid to agents, like and including Plaintiffs, who assisted in their clients' PPP loan applications. But Defendants are refusing to pay those fees, in contravention of PPP regulations.

107. Principles of justice, equity, and good conscience demand that Defendants not be allowed to retain these agent fees. Defendants have fallen short in their duties as lenders, and during a crisis no less. As a result, Plaintiffs and the putative Class have been unable to obtain the agent fees due to them.

108. Accordingly, Defendants must disgorge the portion of all PPP origination fees that they have retained to the extent they are due to Plaintiffs and the putative Class in their capacities as agents.

## COUNT VII – CONVERSION

109. Plaintiffs incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

COMPLAINT AND DEMAND FOR JURY TRIAL

110. Under the SBA regulations, Plaintiffs and the Class, as PPP agents, have a right to agent fees that must be paid from the amount of lender fees provided to Defendants for processing the funded PPP loan applications of Plaintiffs' client and the Class's clients.

111. The SBA regulations state that "[a]gent fees *will* be paid out of lender fees" and provide guidelines on the amount of agent fees that should be paid to the PPP agent, based upon the size of the PPP loan.

112. Additionally, the SBA regulations require that lenders, not loan recipients, pay the agent fees. The SBA regulations unequivocally state that "[a]gents may not collect fees from the applicant."

113. Plaintiffs and the Class assisted clients with applying for PPP loans, including gathering and curating information necessary for completing PPP loan applications that were subsequently funded. Due to Plaintiff's and the Class's efforts, their clients were awarded PPP loans, through applications made with Defendants. As such, Plaintiffs have a right to immediate possession of the agent fees.

114. Although Plaintiffs are entitled to agent fees under the SBA regulations, Defendants have refused to provide those fees to Plaintiffs and the Class, thus keeping the agent fees that were paid to them for purposes of being passed on to the agents. By withholding these fees, Defendants have maintained wrongful control over Plaintiffs' property inconsistent with Plaintiffs' entitlements under the SBA regulations.

115. Defendants committed civil conversion by retaining monies owed to Plaintiffs and Class members.

COMPLAINT AND DEMAND FOR JURY TRIAL

116. Plaintiffs and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiffs, as such, seek recovery from Defendants in the amount of the owed agent fees, and all other relief afforded under the law.

## JURY DEMAND

117. Plaintiffs each demand a trial by jury on all issues pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, and to the fullest extent permitted under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Fahmia, Inc. and Prinzo & Associates, LLC, individually and on behalf of the Class, respectfully prays for the following relief:

(a) An order certifying the Class as defined above, appointing Plaintiffs as the representatives of the Class, and appointing its counsel as Class Counsel;

(b) An order declaring that Defendants' actions, as set out above, constitute unjust enrichment, conversion, breach of contract on behalf of third-party beneficiary, violate Cal. Bus. & Prof. Code § 17200, et seq., violate N.C. Gen. Stat. § 75-1.1., *et seq.,* violate 73 P.S. § 201-1, *et seq*., and violate the SBA's PPP regulations;

(c) An award of all economic, monetary, actual, consequential, compensatory, and punitive damages available under the law and caused by Defendants' conduct, including without limitation, actual damages for past, present and future expenses caused by Defendants' misconduct, lost time and interest, and all other damages suffered, including any damages likely to be incurred by Plaintiffs and the Class;

(d) An award of reasonable litigation expenses and attorneys' fees;

(e) An award of pre- and post-judgment interest, to the extent allowable;

COMPLAINT AND DEMAND FOR JURY TRIAL

(f)  The entry of an injunction and/or declaratory relief as necessary to protect the interests

of the Plaintiffs and the Class; and

(g)  Such other further relief that the Court deems reasonable and just.

This the 10th of July 2020.

By: ___/s/ Daniel C. Lyon_____

Daniel C. Lyon (43828)
**ELLIOT MORGAN PARSONAGE, PLLC**
300 E. Kingston Avenue
Suite 200
Charlotte, NC 28203
Telephone: (704)707-3705
Facsimile: (336)724-3335
Email: dlyon@emplawfirm.com

Richard D. McCune*
Elaine S. Kusel*
Michele M. Vercoski*
**MCCUNE WRIGHT AREVALO LLP**
18565 Jamboree Road, Suite 550
Irvine, California 92612
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
Email:   rdm@mccunewright.com
            esk@mccunewright.com
            mmv@mccunewright.com

Derek Y. Brandt*
Leigh M. Perica*
Connor P. Lemire*
**MCCUNE WRIGHT AREVALO LLP**
231 North Main Street, Suite 20
Edwardsville, IL 62025
T: (618) 307-6116
dyb@mccunewright.com
lmp@mccunewright.com
cpl@mccunewright.com

*Attorneys for Plaintiffs and Putative Class*

*\*Pro Hac Vice* to be filed

COMPLAINT AND DEMAND FOR JURY TRIAL